TUCKER, Judge.
The only question made, in this cause, in the district court, was, Whether the holder of a promissory note can recover in an action brought in his own name against a remote endorser?
The case was shortly thus :
Clingman & M’Gaw gave their note to one John Towers, payable six months after date, for value received, negotiable at the bank of Alexandria. Towers endorsed the note to Harris the defendant, and Harris endorsed it to one Johnston, who endorsed it to Dunlop the plaintiff. Clingman & M’Gaw absconded from Alexandria, before the note became due, and have not since been heard of. The note was protested at the request of the president and directors of the bank of Alexandria, a few days before six calendar months had , expired, but one day after the expiration of six lunar months, supposing the transcript of the record correct. But, in fact, it is said to be incorrect; so that six calendar months had completely expired before the suit was brought; but the court of hustings in Alexandria having been discontinued by the late act of congress, no method could be devised *by which a true copy of the record can now be brought, either before the court of appeals, or the district court of Dumfries.
The declaration sets forth the note, the assignment by Towers to Harris, and by Harris to the plaintiff: “of which the makers had notice; by means whereof, and *870 by force of the act of assembly in that case made and provided, action accrued to the plaintiff, to demand of the makers, the contents of their note; and the plaintiff avers that the makers did not pay the contents of their note, but before the expiration of the six months, absconded from the town of Alexandria and commonwealth of Virginia, and deprived the plaintiff of any remedy at law against them, upon the same; of which the defendants had notice, by means whereof they became liable, &c.” The second count was upon a general in-debitatus assumpsit, for money 'had and received to the use of the plaintiff. There is no reference to the- custom of merchants.
The defendant pleaded, first non assump-sit to both, counts. Secondly, he pleads, “That he assigned and endorsed the note, in the declaration mentioned, to a certain Dennis M’Carty Johnston; who endorsed and assigned the said note to the plaintiff, without this, that the said defendant did endorse and assign the said note to the said plaintiff; and this he is ready to verify.” General replication, and issue, on both pleas.
A bill of exceptions states, that on the trial, the counsel for the defendant requested the court to instruct the jury, that, if it should appear in evidence, that the note in the declaration mentioned was endorsed in blank, and passed by the defendant to Johnston, and was afterwards endorsed in blank, by him, and passed to the plaintiff, the plaintiff’s action could not be maintained : but the court instructed the jury that if it should appear in evidence, that the note came into the plaintiff’s possession in that manner, for a full and valuable consideration paid by him therefor, the plaintiff’s action is sustainable against the defendant.
A second bill of exceptions states, that the counsel for the defendant prayed the opinion of the court, whether a protest (which is set out, with a copy of the note) in which the notary states, that he demanded payment of Towers, who did not pay; that he went to the house of Harris to demand payment, but could not see an} person there to make a demand of, and at the usual place of residence of Johnston, demanded payment of Mrs. Johnston (he being gone on a voyage to sea), and that she did not pay, and that the makers do not dwell in his district, having absconded from the same, to some parts unknown to him, wherefore he made protest, “contained, in itself, evidence of sufficient notice having been given to the defendant, and of such diligence having been pursued by the plaintiff, as could sustain an action on the defendant’s endorsement against him, it not being proved that the defendant ever had been served with a copy of the said protest, or received other notice from the plaintiff, than can be implied from the terms of it.” But it appeared in evidence “that the makers had absconded from the town of Alexandria about the 27th of December, 1797. And the circumstance of their absconding was generally known in the said town : It also appeared, that the defendant and plaintiff were, at the time of making the protest, and ever since, housekeepers and inhabitants of the tow'n of Alexandria. It appeared that the original writ in this action issued the 19th of April, 1798, returnable, &c. And the court were of opinion, and so instructed the jury, that the said protest, under the circumstances aforesaid, contained, in itself, evidence of sufficient notice to the defendant, and of sufficient diligence on the part of the plaintiff to sustain the action against the defendant on his endorsement.”
The jury found a verdict for the plaintiff upon both issues: and he had judgment accordingly in the hustings court of Alexandria ; from which judgment there was an appeal to the district court of Dumfries; where the same was reversed; and from that judgment of reversal an appeal is brought to this court.
^Several questions appear, to me, to be necessary to be discussed in this case. I shall therefore enquire,
1. Whether promissory notes payable to a person therein named, or his order, were negotiable before the statute of 3 and 4 Anne, cap. 9?
This question has been somewhat perplexed by the obscurity and confusion which, upon an attentive examination, will be found in the books of reports, whereby promissory notes are often confounded with inland bills of exchange, concerning which, I will make one or two observations only, by way of marking the origin of this confusion in the books of reports.
Bills of exchange, whether foreign or domestic, are instruments purporting a request, or order, from one person to another, to pay a certain sum of money to a third person therein named, or his order.
Promissory notes, on the contrary, are instruments purporting an absolute promise, by the maker, to pay to a person therein named, or his order, a sum of money therein named.
An essential difference appears from this difference in form; the one being a request to another to pay; the other an absolute promise by the maker himself to pay.
But bills of exchange are sometimes drawn by the maker upon himself.
The case of Hodges v. Steward, 12 Mod. 36, was of this kind. The plaintiff declared, on the custom of London, that where one merchant draws a bill on himself, payable to another, or bearer, and the person to whom it is payable endorses it to a third man, the endorsee, on refusal of payment, may bring an action against the drawer; and says the defendant drew such a bill to F., who assigned it to the plaintiff: on a demurrer, the plaintiff had judg • ment; although the confusion is evident, if understood otherwise. Dehers v. Harriot, 1 Show. 163, was upon a bill of the same kind.
Starke & al. v. Cheesman, Carth. 509, was a bill drawn by the defendant Chees-man, in Virginia, upon Christopher *Cheesman, of Ratcliff, London, which, in truth, was upon himself. And being protested, because the person to whom it was directed was not found, upon suit brought, in which there was a special count, as upon a bill of exchange on the custom of merchants, an indebitatus as- *871 sumpsit; a quantum meruit; and insimul compntasset, the plaintiff had judgment. The same case is reported in 1 Salk. 128; but this particular is not noticed.
The analogy between bills thus drawn, and promissory notes, was so strong as scarcely to be distinguishable. The bill, purporting to be a request from himself to himself, must possibly have been deemed ridiculous, but for the ordinary form of a bill of exchange, to which it was intended to bear an outward resemblance; but intrinsically, it contained such an implied promise exactly, as the promissory note contained expressly.
They were accordingly considered in the same light by the attorneys and counsel. Pearson v. Garnett, Comberb. 227. The plaintiff declared, upon the custom of merchants, that the defendant, “per notam, sive billam secundum consuetudinem, &c.” and sets forth a promissory note to pay the plaintiff sixty guineas, &c.
The case of Lambert v. Oakes, reported in 1 "Ld. Raym. 443, manifestly appears to be upon a promissory note, per lord Mansfield, 1 Burr. 677. In 1 Salk. 127, it is called a bill of exchange: and that part of the case, which states that a demand must be made of the drawer, is unintelligible in that report. But if it be understood as a promissory note, the word drawer, means the maker, and the case is perfectly intelligible. The anonymous case, 1 Salk. 126, pl. 6, is evidently upon a promissory note, though called a bill of exchange. In 12 Mod. 244, Lambert v. Oakes, is reported a third time, and there it is spoken of as a bill of exchange.
Hawkins v. Cardie, 1 Salk. 65; 12 Mod. 213, is mentioned to be an action on a bill of exchange. In Carth. 466; 1 Ld. Raym. 360, it is expressly said, that the defendant made a note, and thereby promised to pay.
*Hill & al. v. Lewis, 1 Salk. 132, the plaintiff declared. 1. Upon two bills of exchange, against the endorser. 2. Upon a mutuatus. 3. Indebitatus as-sumpsit, for money laid out for the defendant’s use: and, upon the evidence, it appeared that Moor, a goldsmith, subscribed two notes, payable to the defendant, which he endorsed, and the plaintiffs, being goldsmiths, accepted them, (that it, discounted them,) and gave other bills, and some money, for them; and, on the same day, they received money due upon other bills of Moor, and might have had the money due upon these bills, if they had been demanded. And Holt, C. J., directed the verdict to be taken upon the count upon the bills of exchange. This case would be perfectly unintelligible, according to Salkeld’s report of it, were it not mentioned that the notes were the foundation of the action.
Pinkney v. Hall, 1 Salk. 126, is reported to have been upon a bill of exchange. In 1 Ld. Raym. 175, it is called a bill also; but, from the description given of it in the plaintiff’s declaration, it evidently appears to have been a note, subscribed by the defendant; payable to Hutchins or order, by himself and his partner; and endorsed to the plaintiff; who had judgment upon a demurrer. Cases Temp. 8 and 9 W. & M. 3.
Potter v. Pearson, 2 Ld. Raym. 759; 1 Salk. 129, was declared upon, in the court of common pleas, as a bill of exchange, but was a note payable to I. S., or order.
This review of the cases, in which promissory notes and inland bills of exchange, are either confounded together, or evidently regarded as having the same legal operation and effect, not only by the parties themselves, but by technical men, conversant in courts, and habituated to drawing declarations in cases arising upon them, is strong evidence, not only of the ordinary, or more properly speaking, customary opinion and usage in regard to them; but also of the legal or judicial interpretation which had been given of them, from time to time, in cases not reported.
*But there is abundant evidence from the books, that until the case of Clarke v. Martin, which happened in the first year of queen Anne, A. Dom. 1702, actions, upon promissory notes, had been maintained by the endorsees, as well as the payers, against the makers, and even against prior endorsers, upon the ground of their affinity to inland bills of exchange (or perhaps, on the ground, that they were such in effect and legal operation, though somewhat different in form), according to the custom and usage of merchants, either within the city of London, or generally; being declared upon in both ways; or sometimes in the one waj', and sometimes in the other.
The case of Horton v. Coggs, 3 Lev. 299; 2 W. & M. 1690, was an action by the holder of a promissory note drawn payable to Barlow, or bearer, in which the plaintiff declares upon the custom of London, and that Barlow delivered the note to the plaintiff, to his own use, in satisfaction of ¿100, which he owed him. And the plaintiff finally obtained judgment, although the court at first inclined to think that the holder of the note could not maintain the action, since it was possible that Barlow himself might have received the money. It is true,that Holt, C. J., afterwards, about six years,,said, in the case of Clarke v. Martin, that it was held, in Coggs v. Horton, that a note was not a bill of exchange, within the custom of merchants. But Levinz, who was himself of counsel with the plaintiff in the cause, says nothing about this objection. And certainly more credit is due to his note of the case at the time, than to the recollection of the chief justice six years after. Besides Gould, justice, at the same time, mentioned this very case, after saying “that he did not remember it had ever been adjudged that a note in which the subscriber promised to pay to I. S. or bearer, was not a bill of exchange. 2 Ld. Raym. 758. It is also to be remarked, that Powell, justice, after-wards doubted upon 'this same point, in the case of Williams v. Cutting, 2 Ld. Raym. 825.
*In Pinkney v. Hall, 1 Ld. Raym. 175; 1 Salk. 126, the plaintiff declared quod infra hoc regnum anglias, there is a custom, &c. And sets forth a note made by one merchant payable to another or his order, by himself and his partner, and that *872 the note was endorsed bj the person to whom it was payable, to the plaintiff, of which the defendant had notice: and the plaintiff had judgment. 8 and 9 W. 3, 1696.
In Claxton v. Swift, 2 Show. 495, sir B. Shower, who was of counsel for .the plaintiff, says, “The custom of merchants is, that whatsoever merchant or other trading person shall endorse or superscribe any note, or bill of exchange, and by such endorsement direct the acceptor of such bill to pay its contents to another, that he thereby becomes chargeable to pay that sum himself, in case the endorsee do not otherwise receive it'.” Anno. 2 Ja. 2, 1685. He proceeds to say, “the more endorsers there are, the stronger is the bill always esteemed upon the exchange, (if before the day of payment,) and of greater real worth is it in- itself, because more men are bound to the payment of it.” 2 Show. 496. This is the earliest case in which I ■ can find the law clearly and explicitly laid down ; and it occurred nearly twenty years before the case of Clarke v. Martin was decided.
In the Bank of England v. Newman, 12 Mod. 241, which was evidently an action upon a note payable to Newman, or bearer, against him as endorser, the law is stated to be the same both with regard to bills and notes. And the same inference may be drawn from lord Raymond’s report of that case. 1 I/d. Raym. 442.
In Lambert v. Oakes, 1 Ld. Raym. 443, the action was brought by the endorsee of a note against the endorser, the note being payable to A. or order. And even Holt, C. J., at that period, made no objection to it; and for aught that appears to the contrary, the plaintiff had judgment.
In Nicholson v. Sedgwick, the plaintiff declared upon the custom of merchants in England, and shewed a note by the defendant Sedgwick, by which he promised to pay, to one *Mason or bearer; and that Mason delivered the note to the plaintiff in value received; and for nonpayment on demand he brought this action. And, after verdict, on motion in arrest of judgment, the judgment was arrested; but the court said the bearer might bring the action in the name of him to whom the note was payable. And the reporter adds, that it had been resolved in B. R., between Hodges and Steward, that the endorsement to the bearer, binds the party, who immediately endorsed it before him. 1 Ld. Raym. 180, 181; An. Dom. 1697.
This tissue of cases, would, of themselves, satisfy me, that no distinction had been made, either by the usage and practice among merchants, or by the decision of courts, between the legal effect, obligation and consequences of an inland bill of exchange drawn in the ordinary form, by one person upon another, or by the more extraordinary form of a request from himself to himself, and a promissory note in the ordinary form of a promise by one man, to pay to another, or his order, a certain sum of money, until the case of Martin and Clarke overturned the opinions, usages, and decisions of preceding courts, lawyers, and merchants. But the following case reported by Carthew, an eminent counsel and reporter, in the reign of James 2d and William 3d, puts the matter beyond all question. By the preface to his reports, it appears they were not published till the year 1728, after his death: and this circumstance pretty well accounts why the case has not been noticed among those referred to in discussing this question. The decision was in the 5th year of W. and M. Anno 1693, or 1694. The case was thus:
The plaintiff, Thomas Williams, brought an action on the case against Joseph Williams, and declared upon a note, drawn by one John Pullin, by which he promised to pay ,£12. 10. unto the said Joseph, on a day certain : and he endorsed the note for value received unto one Daniel Eoe, who endorsed it to the plaintiff for the like value received. This state of the case is, in every particular, perfectly parallel *to the case of Dunlop v. Harris, being an action brought by a remote endorsee of a promissory note against a remote endorser, pretermitting the intermediate endorser. The case then proceeds thus:
And now the plaintiff, as second endorsee, declared in this manner, that the city of London is an ancient city, and that there is, &c. a laudable custom among merchants and others exercising commerce within the kingdom of England, being used and approved of, to wit, so sets forth the custom of merchants, concerning notes so drawn .and endorsed ut supra, by which the first endorser is made liable as well as the second, upon failure of the drawer, and then sets forth, that Pullin, the maker of the note, promised to pay, &c., setting forth the note. And further, that it was endorsed by the defendant to Eoe-, and by Foe to the plaintiff, according to the usage and custom of merchants; and that the drawer having notice thereof, refused to pay the money, whereby the defendant, according to the usage and custom of merchants, became liable to the plaintiff, and in consideration thereof promised to pay it, &c.; alleging that they were all persons who traded by way of merchandize. The defendant having pleaded a frivolous plea to the declaration, the plaintiff demurred; and, upon the first opening of the matter, had judgment in the king’s bench; and, upon a writ of error brought in the exchequer, (in which it is to be remembered all the judges of Westminster hall, sit,) the only error insisted on was, that the plaintiff had not declared on the custom of London, or any other particular place, (as the usual way is,) but had declared on a custom through all England; and if so, it is the common law. To which it was answered, that the custom of merchants is part of the common law, of which the judges will take notice, ex officio, and the judgment was affirmed.
A fairer case could not be presented to try the question of law. Upon a demurrer, he that commits the first fault in pleading, shall never have judgment in his favour. This was before the last .statute of jeofail. 4 Anne, ch. 16. And any error in the declaration, either in point of law, or even *of form, would have reversed the judgment of the court of king’s bench. Yet it was affirmed; and, upon the *873 very ground, which it is important should be settled in this court. Never were two causes more perfectly similar, than this case of Williams v. Williams, and the case now under consideration in this court. Upon the question as to the right of action, the most dextrous casuist could not point out the smallest variance between them; both the plaintiffs being endorsees, and both the defendants remote endorsers of a promissory note; with this difference only in favour of the present plaintiff, that the note is expressly made payable to order; whereas, from the state of the case in Carthew, it does not appear that the note there was so payable. Carth. 269.
The principles established in this case, are strictly conformable to those which the experience of another century, aided by the powerful operation of legislative wisdom, and the soundest discretion of the ablest judges that have ever sat in Westminster hall, has shewn to be most beneficial for commerce.
The endorser of the note is not only considered as warranting the note, but as drawing a new bill; and thereby rendering himself immediately liable to every en-dorsee to whom it. may, for a valuable consideration, be assigned. Pvery subsequent endorser is considered in the same light: and the bona fide owner of the note, if he does not receive payment of the maker, may, at his election, bring suit against him, or against any endorser, however remote. If he recovers against a remote endorser, such endorser has the same remedy against the maker of the note, or any prior endorser, as the owner of the note had against him. The currency and credit of such notes is aided by such a construction; for then, the more endorsers, the more security. But if the owner of the note can only maintain an action against the next immediate endorser, circuity of action is wholly unavoidable; delays are encouraged; and final hazards greatly increased. Besides, one suspicious name upon the back of the note, would instantly stop its circulation, *if there were twenty preceding respectable endorsers. Tor the party to whom the note may be offered, knowing that he will probably be put to the trouble of one suit, at least, against the suspicious endorser, before he can call on the others, will not accept of the note. This interpretation, therefore, is most favourable for the purposes for which it was intended; and reason and convenience being on that side, we should struggle hard against the weight of authority, bottomed upon forms and principles which legislative wisdom, judicial discretion, and the experience of a full century have completely exploded. Such is the authority of chief justice Holt, in the famous case of Clarke v. Martin, 1 Ann. A. Dora. 1702: an authority in the face of all the former cases which I,have cited; and one which the legislature itself, within the short compass of two years, was obliged to correct: and which has since been doubted by the ablest judges, though fortunately for their country, they were saved the trouble of contrary decisions by the interposition of the parliament. The case was thus, 2 Ld. Raym. 757 :
Clarke, brought an action' on the case against Martin, upon several promises: one count was, upon a general indebitatus as-sumpsit, for money lent to the defendant; another count was upon the custom of merchants as upon a bill of exchange, and shewed that the defendant gave a note subscribed by himself, by which he promised to pay to the plaintiff, or his order, &c. Upon non assumpsit, a verdict wras given for the plaintiff, and entire damages. And it was moved, in arrest of judgment, that this note was not a bill of exchange on the custom of merchants; and therefore the plaintiff, having declared upon it as such, was wrong; but that the proper way, in such cases, is to declare upon a general in-debitatus assumpsit for money lent, and the note would be good evidence of it: and Holt, C. J., being of that opinion, the judgment was arrested, and so it was in Potter v. Pearson, 2 Ld. Raym. 7S9. Sir B. Shower, for the plaintiff, argued, that this note, being payable to the plaintiff or his order, was a bill of exchange, inasmuch as *by its nature, it was negotiable. He argued further, that the note had been endorsed, payable to I. S., who might have brought his action upon it, as upon a bill of exchange, and might have declared upon the custom of merchants : Why then, should it not, before such endorsement, be a bill of exchange to the plaintiff himself? This part of the argument seems to shew, that the question turned altogether upon the nature of the instrument, as between the parties then before the court; that is, between the maker of the note, and the person to whom it was payable; and not as it would have been between the maker and an endorsee, or an endorser and endorsee. And, if that was the point upon which the court gave judgment, the decision in that case would not touch the case now before the court; which is not between the maker and the person to whom the note is payable ; but between an endorsee and an endorser.
While a promissory note continues in its original shape of a promise from one man to another, it bears no similitude to a bill of exchange. When it is endorsed, the resemblance begins. Por then it is an order by the endorser, upon the maker of the note, (his debtor by the note,) to pay the endorsee. This is the very definition of a bill of exchange. The endorser is the drawer ; the maker of the note the acceptor; and the endorsee is the person to whom it is made payable, per lord Mansfield, . 2 Burr. 676.
The supposition that the question in Clarke v. Martin, did, in fact, turn upon the nature of the instrument, as between the maker of the note and the person to whom payable, is strengthened by lord chief justice Holt’s decision before, in the cáse of Lambert v. Oakes, (which we may remember was between the endorsee and endorser of a promissory note,) in which lord Holt said, the endorsement, though upon discount, will subject the endorser to an action; and again, if A. endorses a bill blank to B. he thereby puts it in the power of B. to overwrite what B. pleases: and, further, if the action be *874 brought against the endorser, it is not necessary to prove the hand of the drawer; for though it *be forged, the endorser is liable. The same doctrine is advanced in a similar case, The Bank of England v. Newman, in which the plaintiff recovered. 1 Ed. Raym. 442, 443, 444. The case of Pinkney v. Hall, 1 Ld. Raym. 175; Nicholson v. Sedgwick, Ibid. 180, 181; Hawkins v. Cardie, Ibid. 360; and in Tassel v. Lee, Ibid. 744, at the end, this principle seems not to have been doubted. In the last case, it is said, a goldsmith’s note endorsed is a bill of exchange against the endorser. Carter v. Palmer, 12 Mod. 380; Hodges v. Steward, Ibid. 36. Now, unless we suppose the chief justice, not only inconsistent with the other judges, but with himself, we must suppose that the question turned upon the nature of a promissory note, before endorsement; and this is further confirmed by what is said by the whole court, in the case of Meredith v. Chute, decided in the same term with Clarke v. Martin; which appears to have been an action of assumpsit, in which the plaintiff declared that the defendant, in consideration that the plaintiff, at his special instance and request, had delivered to the defendant a certain note, by which one Hurst assumed to pay to the plaintiff 100 guineas, assumed to pay the plaintiff, &c.; and after verdict for the plaintiff, on motion, in arrest of judgment, the court held, that the note being subscribed by Hurst, was good evidence of a debt due to the plaintiff; and therefore, the delivery of that evidence to the defendant, at his request, was a good consideration for the as-sumpsit of the defendant, upon which the action was brought. Now the plaintiff and defendant in this case, seem to have stood in the relation of endorsee and endorser of the note of Hurst. And the plaintiff had judgment. 2 Ld. Raym. 760.
But the case of Hill and others v. Lewis, 1 Salk. 132; Holt’s Reports, 16, (the same before Holt, C. J., 5 W. & M., that is to saj', eight years before the case of Clarke v. Martin,) puts this matter beyond all question. The action was brought by the endorsees of a promissory note against the endorser. And Holt, C. J., said, on that occasion, *that goldsmiths’ bills were governed by the same laws and customs as other bills of exchange; and every endorsement is a ■ new bill; and so long as a bill is in agitation, and such endorsements are made, all the endorsers, and every of them, are liable as a new drawer. This is precisely the doctrine implied by the decision in Williams v. Williams, Carth. 269, and apparently settled, until the decision in Clarke v. Martin, either did in fact, or was supposed to, unsettle it. By supposing that case, as relating solely to the question between the maker of a promissory note, and the person to whom it is . payable, all the cases may be reconciled. By a contrary decision, chief justice Holt is not only at war with Lombard street and the merchants, but with former judges and himself.
I therefore hold, that promissory notes payable to a person therein named, or order, were negotiable instruments before the statute of the 3 and 4 Ann. ch. 9: and that, when endorsed by the person to whom payable to another person, the endorsee might, before the statute, have maintained an action against any prior endorser, or maker of the note at his election.
But the preamble of that statute will probably be thought conclusive evidence against this opinion, and I very candidly acknowledge, that I once thought it to be so. But I have changed my opinion from a candid and diligent examination of the cases, which I have just reviewed; and from a more minute attention to the first words of the preamble to that statute, which are, “whereas it has been held, that notes in writing, &c.” The word held, is often applied by the writers on law, to decisions of questionable authority: and in such a light, I think it not improbable that the penners of that statute held the decision in Clarke v. Martin; which contravened the decisions in numerous other cases which T have cited, and which were then quite recent, and seem to have been regarded by the profession as absolutely settled: nor was there a perfect acquiescence in chief justice Holt’s opinion, even at that time, 2 Ld. Raym. 757, per Gould, justice; and 2 Ld. Raym. 825. per Powell, justice.
*2. I shall take a short view of the laws of Virginia relative to promissory notes.
The title of an act occurs in the edition of 1733, 1705, ch. 34, by which it appears, that bonds and obligations were made assignable at that time; but no notice is taken of promissory notes in the title; nor have I been able to discover whether there was any thing respecting them in the body of the act, having never seen it. In Beverley’s Abridgment, p. 60, printed in 1728, it is said, that bonds or bills for debt may be assigned, and the assignee, his executors and administrators, may bring the action in his own name.
But the act of 1730, ch. 5, amended by that of 1748, ch. 27, gave .to the person to whom a promissory note for the payment of money or tobacco might be payable, an action of debt for the recovery thereof; and gave, to the defendant, liberty upon the trial to make all the discount he could against such debt, which upon proof should be allowed by the court.
And the latter act declared it should be lawful for any person to assign and transfer any- bond or bill for debt, or any such note as aforesaid, (viz. for money or tobacco, ) and that the assignee or assignees, his and their executors and administrators, by virtue of such assignment, shall and may have lawful power to commence and prosecute any suit at law, (viz. an action of debt or otherwise in his own name,) for the recovery of any debt, (viz. whether money or tobacco,) due by such bond, bill or note, as the first obligee, (or payee in case of a bill or note,) his executors and administrators might or could lawfully do: provided, always, that in any suit upon such bond, bill, or note, so assigned, the plaintiff shall allow all discounts that the defendant can prove, either against the plaintiff himself, or against the first obligee, (or payee in case of a bill or note,) *875 before notice of such assignment was given to the defendant.
The words of this act would appear to give effect to a second assignment as to the first. I know not, whether *it has been interpreted in that manner in this court; nor whether it has been supposed to provide only for the case of an assignment to several in the same right, as to one or more executors; or one or more partners in trade. My own interpretation has been in the former, and more extensive, sense: and I have lately understood, that this court have decided upon the same principles.
The act of 1786, ch. 68, edition 1794, ch. 29, seems to be still more general in its expressions, declaring that assignments of bonds, bills, and promissory notes, and other writings obligatory, for the payment of money or tobacco, shall be valid; and an assignee of anj' such may thereupon maintain an action of debt in his own name, but shall allow all just discounts, riot only against himself, but against the assignor, before notice of the assignment was given to the defendant.
These acts gave to the plaintiff,
1. An action of debt upon a promissory note for money; which the decision, in Clarke v. Martin, would probably have deprived him of: Since it seems to have been the decision in that case, and in Potter v. Pearson, that a general indebitatus as-sumpsit, would not lie upon a promissory note for money, though upon indebitatus assumpsit, for money lent, the note might have been given in evidence. 2 L,d. Eaym. 758, 759.
2. They gave the same remedy upon a bond, or note, for tobacco, as for money.
3. They made bonds, or penal bills, assignable, so as to enable the assignee to maintain an action in his own name, which he could not at common law.
4. They gave to the defendant a right to set off and discount any payment which he may have made, either to the assignee, or to the assignor, before notice was given of such assignment.
These are all the alterations which appear to me to have been introduced by our acts of assemblj’. If, by the common law, founded upon the custom of merchants, promissory *notes were negotiable instruments, as I have supposed to be proved by the cases which I have cited; and if, by that law and custom, the remote endorsee of such a note might, before the making of our act of assembly, have maintained an action against a remote endorser, as I conceive is fully proved also, by those cases, then I shall contend that that right has not been taken away by any act of the legislature of Virginia. For where a statute gives a new remedy in any case, it is clear law that the former remedy is not taken away, unless there be express words to that effect. 2 Ld. Raym. 993; Brough v. Parkins, 3 Salk. 69. There the question was, Whether, since the statute of the 9 and 10 W. 3, concerning protests of inland bills of exchange, an action could be brought without a protest? And Holt, C. J., said, “This statute does' not destroy or take away the party’s action, where there is no protest; nor is the want of a protest any bar to the action; but the act seems only to take away from the plaintiff his interest or damages, where he has not made a protest. ” And Powell, J., was of the same opinion, and said, “I cannot agree to take away a man’s right bj ambiguous words in an act of parliament. They must be express words, which take away a man’s action.” So here the most that our acts take away is the right to recover the whole amount of the note against the maker, unless notice be actually given him of the assignment, before he has paid any part of it to the party to whom it was payable, or any other assignor, by the last act. But it takes away no right as between the endorser and en-dorsee ; for the endorser is responsible for the whole sum mentioned in the note, unless there be an antecedent endorsement, shewing that a part of it has been paid, and the amount: which is not pretended in the present case.
It remains to consider the effect of the act of 1795, ch. 14; which declares that “all bills of exchange or drafts for money in the nature of bills of exchange, drawn by any person residing in this state, on any person in the United States, shall be considered in all cases whatsoever as inland *bills of exchange.” Now a promissory note for the payment of money, when endorsed by the payee to another, is a draft in the nature of a bill of exchange, as acknowledged on all hands. 2 Burr. 676. It would seem, from this act, as if the legislature intended to put all such negotiable instruments upon the same footing; and consequently, a remote endorsee would have the same remedy against any prior endorser, as the first endorsee would have against the maker, or first endorser.
Having thus stated what appears to me to be the general law respecting promissory notes payable to a person therein named, or his order, as between an endorser and endorsee, I shall notice two cases in this court which may be supposed to have settled the law otherwise.
The first, in the case of Mackie’s ex’ors v. Davis, 2 Wash. 219, which was an action brought by the assignee of a bond against the obligee, by whom it had been assigned to him. The first count was for money had and received to the plaintiff’s use, in consideration of which the defendant assigned the bond to him to bring suit on, &c., and that he did bring suit, and obtained judgment, and issued execution, which was returned no effects.
The second count stated, that the assignment was made in consideration of a release of a former debt, &c. The third count is for money had and received to the use of the plaintiff. Verdict for the plaintiff, upon a question referred to the court, Whether an action can be maintained against the endorser of a bond, or his executors, without any special undertaking on his part to ensure payment?
The reasoning of the judges in that case, has been supposed to indicate an opinion that the action between an endorser and endorsee of a promissory note, is not founded upon the custom of merchants; but upon the privity which, by the common *876 law, exists between the immediate parties to the transaction; and that that privity extends no farther than to the parties themselves. The inference does not appear to me to be warranted by the text. The passages' *which appear to have received this strict interpretation, stand thus, “against the drawer or endorser of a bill of exchange, indebitatus assumpsit will lie; because a draft, in itself, imports a debt to be due; promissory notes stand in the same situation, the endorser being considered as a drawer. It is on account of the privity between the1 endorser and the ’ endorsee that this action may be maintained. The action, (i. e. against the endorser, as I understand it,) is not founded on-the bill or note, but on the implied undertaking of the endorser. These principles owe their existence, not to the custom of merchants, but to the common law.” 2 Wash. 229. Another of the judges said, “independent of these principles of the common law, which create, on the part of the assignor of a bond, an implied undertaking to pay, if the obligor does not, the general understanding of those who enter into such negotiations, would be sufgcient to make the assignor liable. The assignee purchases principally upon the credit of the person from whom he receives the bond;” and the other judge then present said, “The right of the as-signee to resort back to him from whom he acquired the bond is bottomed upon principles of common law.” I can discover nothing, in either of these opinions, to contradict the principles established in Williams v. Williams, Carth. 269, that every endorser of a promissory note is'liable to any endorsee however remote. Nor is it material whether the obligation arises out of the Law Merchant, as a part of the common law, or 'out of the general principles of the common law. Nor can it be inferred in reason, that when a man assigns a note to another, or his order, and that other assigns it to a third person, pursuant to the authority given in the endorsement, that there is no privity between the first assignor and the last assignee. Reason and convenience, “and the general understanding of the parties in transactions of this sort, (as said by one of the judges in that case,) would be sufficient to make the assignor liable.”
The second case which I shall notice, is that of Cooke v. Simms, 2 Call, 39, in this court. In that case the plaintiff *declared upon a special agreement to transfer stock, without laying an'y assumpsit by the defendant, which ought to have been averred, as was said, because the promise is the very gist of the action; and therefore should be stated. In delivering the opinion of the court, the president is stated to have said, ‘ ‘The question is, whether, independent of the act of parliament in Fngland, and of our act of assembly, (neither of which apply,) an action on the case will lie on a promissory note, singly, without adding a promise. The cases produced, and. two others, coming more directly to'the point, Clarke v. Martin, 2 Ld. Raym. 757, and Burton v. Soutter, in the same book, 774, prove that it will not; but that -the declaration must 'lay an indebitatus assumpsit, according to the form- in the Attorneys’ Practice in K. B., and give the note in evidence.”
I cannot but suppose that a slip of the pen, in omitting the words “of this sort,” must have happened in taking down this opinion. For the action was not brought upon a promissory note, but upon a special contract to pay $5000, on receiving a certain quantity of six per cent, stock. There was no analogy between that case, and the case now under consideration. Any reasoning, upon that case, therefore, cannot be understood as establishing a precedent in ,this. There were mutual promises: Here there is no such thing.
The case of Lee v. Love, 1 Call, 497, was an action, by the endorsee of a promissory note, similar to the present, against the endorser. The jury found a protest for nonpayment, I presume by the maker. They likewise found expressly, that no suit was brought by the plaintiff against Skinner, the maker. The district court gave judgment for the defendant, thinking that due diligence had not been used, in that case, to recover the money of the maker of the note. The judgment was affirmed in this court, the presiding judge, on that occasion, declaring “that the court considered the case as having been already decided.” Whether upon the point, that a suit was necessary, or not, before recourse could be had against the endorser does ■ not appear; but I ^presume it was upon that ground: It being so stated by the reporter in the marginal note. And, if so, the decision in that case does not affect the principles which I have heretofore been considering. I am not acquainted with any other decisions in this court which may be considered as applicable to them.
The case of Mandeville v. Jameson, in the' supreme court of the United States is, I confess, expressly against the opinion which I have delivered on this general question ; and I owe too much respect to the opinions of those who decided that question, to controvert their decisions any where, but in this place. Here, I must decide according to my own conviction, founded upon obligatory precedents, or such as I conceive to be obligatory upon me. Had the question between the parties in that suit had any relation to the constitution or laws of-the United States, I should have regarded the decision as obligatory upon me as a precedent: But having no relation to either of those subjects, or any other in which the judgment of this court may be liable to revision by the supreme court of the United States, I do not regard it as a precedent.
3. I shall now proceed to what I conceive to be the third important point in this cause, namely, Whether, under the circumstances of this case, as admitted by the defendant’s first plea to the first count in the declaration, and as it appears from the evidence objected to in the second bill of exceptions, the plaintiff can maintain his present action, no suit having ever been brought against the makers of the note, who absconded before it was due?
*877 By the custom of merchants a bill of exchange cannot be protested before the day of payment; but the custom is, where the party on whom the bill is drawn absconds before the day of payment, the payee, to have better security for the payment, and to give notice to the drawer, may protest it: And after the time of payment is incurred, it ought to be protested the same day. 1 Ed. Raym. 743. But this relates only to foreign bills. For there is no custom for the ^protest of inland bills, nor any certain time assigned by the custom for the payment. Therefore the money ought to be demanded in a reasonable time after it is payable; and then, if it be not paid, the drawer, by the custom, will be chargeable. Ibid. 743. Tassel & Lee v. Lewis.
A protest not being necessary upon an inland bill of exchange by the custom of merchants; and being only necessary under our act of assembly to entitle the party to interest in case of non-payment; or to secure the party to whom it is payable from any liability for costs and damages, where due notice is neglected to be given, we must enquire, Whether this clause of the act relates to instruments such as the present, viz: such as are in their original form promissory notes, but by endorsement, and transferring from one to another, become inland bills of exchange, as between the endorsers and endorsees?
The protest states, that the notary demanded payment of Towers, the first endorser, and that he did not pay: That he went to the house of Harris, the defendant, to demand payment, but could, not see any person to make a demand of. Harris, having by his endorsement undertaken to be responsible for the punctuality of Towers, notice that Towers did not pay, and a protest for that cause, seems to me to be sufficient to charge Harris, as the endorser of an inland bill of exchange within the meaning of the act. The protest assigns a reason why he did not go to Clingman & M’Gaw, namely, that they had absconded. This is a word of large import: It imports that the parties did reside within the district, and had removed themselves privately and fraudulently. The bill of exceptions states, that the fact and its notoriety for some months before the note became due, were proved at the trial: That the defendant all the while resided in the same place, and there was certainly no delay in bringing the suit; which, in this case, was, I conceive, legal notice. Under these circumstances, and even under the authority of Lee v. Love, I think a suit was not necessary: for it is not shewn, on the part of the defendants, that *Clingman & M’Gaw had any effects in the hands of any person in Alexandria, liable to an attachment; and the presumption arising from the parties absconding is rather against such a supposition than in favour of it. At least I do not conceive it strong enough to impose upon the plaintiff the necessity of proceeding in that manner, before he could resort to the present defendant.
As to the question, Whether the action was brought too soon? That seems to me not to be presented in such a form, either by the declaration or the bill of exceptions, as to make a decision upon it necessary. Upon the whole of this case, I am therefore of opinion, that the judgment of the district court ought to be reversed, and that of the hustings court affirmed.
ROANE, Judge.
This is an action by an endorsee against the remote endorser of a promissory note; and the question is, Whether it be sustainable?
The first bill of exceptions states that the note, in the declaration mentioned, was endorsed in blank, and passed by the defendant to Johnston; and by him (Johnston) endorsed in blank and passed to the plaintiff.
This statement is conclusive that Johnston had once the property of the note by the transfer to him, and that it was from him, and not from the defendant, that the plaintiff received it. This statement is therefore fatal to Mr. Wickham’s position that the plaintiff, by virtue of the blank endorsement, might be considered as the immediate endorsee of the defendant.
This case is to be considered, 1. As under the principles of the common law; 2. As affected by our statute.
By the principles of the common law, notes unsealed are discriminated from specialties; they stand upon the same footing with parol promises, except only that they are capable of more easy proof. 2 Tuck. Black. 465. In respect of the necessity of shewing a consideration there is no difference between the two.
*In the case of Rann v. Hughes, 7 Term Rep. 351, (in a note) in the house of lords, and where a judgment, in the exchequer chamber, was affirmed, the chief baron Skynner, in delivering the opinion of the judges, said, “that all contracts are by the law of England distinguished into agreements by specialty,, and by parol; and that there is not any-such third class as some have endeavoured to maintain, as contracts in writing; if they be merely written, and not specialties, they are parol, and a consideration must be-proved. ’ ’
Jt is the privilege of a specialty in regard to the solemnity of its execution, and its. delivery, that a consideration need not be-proved; and, originally, this was, perhaps, the only species of contract to which this, privilege extended. But the necessities of trade made it expedient to depart from this-strictness, and adopt the custom of merchants in relation to foreign bills of exchange ; then they were extended to inland-bills of exchange; and lasüy (in England) to promissory notes. This adoption is supposed by Chitty, on bills, to have been extended to foreign bills in the 14th century, and in the 17th century to inland bills; bu.t promissory notes were not exalted to this, ground till the statute of the 3 and 4 Anne.
Blackstone also confirms the latter positions by saying that the custom of merchants was expressly enacted with respect to inland bills by statute 9 and 10 W. 3, and 3 and 4 Anne; and that, by virtue of' the last statute, promissory notes became endorsable over as bills of exchange. 2', Black. Com. 467.
*878 I had supposed it had long been agreed that, prior to the statute of Anne in England, promissory notes stood only on their common law foundation, and were not exalted to the ground on which bills of exchange were permitted to stand by virtue of the custom of merchants. The respectable opinion to the contrary, just delivered, has led me to enquire into what otherwise I should have taken for granted. I admit there were contrary decisions in England, on this subject, *prior to the statute of Anne; but I did suppose that the cases ruled by lord Holt, and the court of king’s bench, (and, in the instance of Clarke v. Martin, unanimously,) which are referred to in that statute, and which that statute was made to obviate, together with many, if not uniform, decisions since, had put that question to rest. Without referring to the preamble or words of that statute itself, which are very strong, as declaratory of the law upon this subject, I avail myself of the opinion of the court of king’s bench in England, as delivered by lord Kenyon in Brown v. Harraden, 4 Term Rep. 151. This decision, in my judgment, supersedes the necessity of a minute examination of the old cases. He said, “It is not necessary to enquire, whether lord Holt was right is adhering so pertinaciously to his opinion; that, before the statute of Anne, no action could be maintained on promissory notes, ‘as instruments.’ His authorit3’ made others j'ield to him, and it was thought necessary to apply to the legislature to apply a remedy. Since the statute of Anne, the holder of a note may declare on it according to the statute, though not according to the custom of merchants. The words of the statute ought to decide the question, which the common usage of mankind has since put into a state of repose. It recites that promissory notes were not assignable, or endorsable, within the custom of merchants, and that the en-dorsee could not maintain any action upon them within the custom of merchants. The struggle, between the merchants and the courts of law, was, whether the party could declare on these notes according to the custom of merchants. Lord Holt thought not; but the statute which was passed, at the instance of the merchants, has made them what they were not before. With the assistance of the statute the3 are now acted upon as if they had been within the custom of merchants.” This decision is so extremely strong and apposite, that be the old cases as they may, I hold that it is, and has long been settled in England, that that statute, and that only placed promissory notes on the ground of bills of exchange.
*If, then, the custom of merchants does not appl3' to promissory notes independent of the statute of Anne, which was never in force here, how does the case stand on common law principles? Before those principles are departed from, must not an enactment, as to them, of the custom of merchants, be clearly shewn to have taken place?
By the common law neither debt, nor in-debitatus assumpsit, la>’ against the acceptor of a bill of exchange, but only a special action on the case founded on the custom of merchants. The reason is, that the acceptance is only a collateral engagement to pay the debt for another, in the same manner as a promise by a stranger to pay, (fee. if the creditor will forbear his debt. 4 Bac. 732. The drawer of the bill owes the payee, from whom he has received value, and the drawee owes the drawer, but, not owing the payee, there is no consideration moving to him, from the payee, which can support the promise, on common law principles. So, in the case of several endorsements, the last endorser owes the endorsee, in default of payment by the drawee of the bill, or maker of the note, and his endorser owes him, but he (the first endorser) owes not the last endorsee, any more than, in the other case, the drawee owes the payee. In Bacon’s Abridgment, I find it laid down, from Roll’s Abridgment, that if A. owes B., who owes C., and it is agreed that A. shall pay to C. B.’s debt, C. giving him four days forbearance, there an action will lie by C. against A. But I presume it is only in consideration of such forbearance that such action would have lain.
A recourse therefore by the last endorsee against the first endorser is equally forbidden by the common law principles with the one by the payee against the drawee, repro-bated by the quotation just made from 4 Bac. 732. In neither case, can a consideration be shewn without calling in a third person not a party to the action. The case however is otherwise, and so decided in Mackie v. Davis, in relation to the last endorser, to^ whom the consideration directly moved"; and, as to whom, there is a privity.
These common law principles, however, are departed from in relation to such securities, and such only as did, or now do fall within the custom of merchants, but then the action must be grounded on that custom. By that custom an endorsement as well as an acceptance creates a debt, although in the case of a prior endorsement in relation to the last endorsee, as well as of the acceptance of a bill, it is only a collateral undertaking, and there is no direct consideration moving between the parties. The undertaking of an endorser, in relation to a remote en-dorsee, stands on the same principle, in respect of a consideration, with that of the drawee the acceptor of a bill in relation to the payee. There is this difference, however, between the cases; that th.e acceptor engages in an express unconditional contract, the endorser in an implied conditional one only. The clear exemption therefore of the acceptor from liability, on common law principles, is taking a much bolder ground than is necessary to be taken to exempt the endorser under his implied engagement. The truth is, that, in relation to notes, not affected by the custom of merchants, a want of consideration, or, in other words, the non existence of a debt, may be shewn even against an endorsee, 1 Fonbl. 335; but a recovery against a remote endorser, on the ground of a debt due to the plaintiff by an immediate endorsee, would be an invasion of the remote endorser’s right to *879 shew that he owed nothing to his endorsee; without which no recovery ought to be had against him.
But it is said that the assignment of a note is also an assignment of such assignments thereon as may have previously existed. If so, if the assignment, and not the note, be considered as the instrument assigned, might not (which was never pretended,) the last assignee sue his assignor after having sued the former assignor upon his assignment, without suing the maker? Has not a suit against the maker of the note been always (except under particular circumstances) held indispensably necessary? But the assignment is not an absolute undertaking; it is not a note or writing, *itself, for the payment of money or tobacco. It is within the reason, at least, of collateral bonds, which were not assignable, prior to the act of 1795. But if the assignment on the note be considered as the instrument assigned, that alone will not warrant a recovery. In Mackie v. Davis, it was not the mere circumstance of the assignment which justified the judgment, but the existence of a debt between those parties, of which the assignment was evidence. I have already said that as to a remote assignor, such a debt cannot be enforced, for want of a direct consideration moving from the last assignee to such assignor.
Must we not then say, that this action, as on common law principles, cannot be maintained? And on common law principles only, can this question be viewed. For the case of Horton v. Rose, has decided that the effect of our statute was not to put bonds and notes on the same footing with bills of exchange; was not to extend to them the aforesaid custom of merchants. If it had, that decision was wrong, as it preserves the equity of the maker of the note, notwithstanding a transfer; whereas that of the maker of a note, negotiable by the custom of merchants, is lost by the assignment. In revising that decision, I see no cause to retract the result to which the court then came, notwithstanding an elaborate critique to the contrary. When I first read that criticism, I was at first almost induced to agree with the author in opinion that we had laid too much stress upon the words in the statute of Anne, as going to put notes in that country, upon entirely the same footing with bills of exchange, and thus to extinguish the equity of the maker, by virtue of the endorsement. But I have now reperused that statute; and that revision, in addition to the clear and strong opinion of lord Kenyon, as above mentioned, in the case of Brown v. Har-raden, has dispelled every doubt. The principles of the common law are merged in that country, in relation to promissory notes, by the enactment in that statute of the custom of merchants. This has not been done in this country; and therefore the principles of the common law must prevail: *going by those principles, I must be of opinion that the present action is not sustainable; and therefore that the judgment of the district court ought to be affirmed.
FRAMING, Judge.
The argument of the appellant’s counsel has proceeded on the ground of a supposed similitude between promissory notes and bills of exchange. But, in fact, there is no such similitude. Clearly not, as to foreign bills ; for the object of them is merely to withdraw money from a foreign country, and to give facility to that operation, the law accomodated itself to the course of trade, and the custom of merchants; but this, being a mere indulgence for a particular purpose, is not to be extended any further than the purpose for which it was introduced. As however the convenience of it, in commercial transactions, was sensibly felt in England, a statute was made, in that country, during the reign of Will. 3, for putting inland bills upon the same footing; whereby, men having money in different parts of the kingdom, were enabled to collect it by the intervention of a third hand, without trouble, expence or risk: and in a trading country, where the activity of commerce puts every species of capital into rapid circulation, it was soon perceived, by mercantile men, that a like quality given to promissory notes, would increase capital, by adding to the quantity of circulating paper: and, therefore, they also, were put upon the footing of bills of exchange, by the statute of the 3 and 4 Anne. So that the similitude, even in England, depends entirely upon statutes, and not upon the common law. Of course it follows that, if there be any such similitude in this country, it must depend upon the statute law also. But, so far from that being the case, all our statutes, upon the subject of bills, specialties, and promissory notes, keep up a clear distinction between them. Thus foreign bills are secured, as such, by various statutory regulations; while the others are left as they were, except with the additional qualities of being capable of supporting a new action, and being merely assignable: which continued to be *the case, until the act of 1786, gave to inland bills of a particular description, nearly all the negotiable qualities of a foreign bill. But these qualities were given to that species of paper as bills of exchange merely, and therefore no paper, not answering that description, can claim the benefit of the statute: on the contrary, all the acts relating to specialties and promissory notes, speak of them as such. Which is evinced by that very act of 1786; for, in a subsequent section, it provides for the assignment of bonds and promissory notes in terms. This had also been done by the preceding act of 1748; and was confirmed by that of 1795 : which first makes bills, drawn on any part of the United States, inland bills; and then proceeds to declare that bonds and obligations may be assigned, and sued upon bj' the assignee. So that there appears to have been a clear distinction between Jihem, in the view of the legislature, throughout all their acts, instead of any intention to blend and confound them together, or, in other words, to create an exact resemblance. Then see what have been the determinations of the court upon them. In Lee v. Love, it was held that the assignee of a note must sue the maker before he could have recourse to *880 the assignor: whereas no such suit is necessary in the case of a bill. Again, the diligence required, according to the cases of Mackie v. Davis, 2 Wash. 219; M’Williams v. Smith, 1 Call, 123; Mennis v. Pollard, 1 Call, 226, and Barksdale v. Fenwick, 4 Call, 492, is not the same with that which is requisite in the case of bills of exchange. Here, then, it appears that the decisions of the court, have hitherto supported the distinction between the instruments, so clearly marked out and understood by the legislature. I do not indeed remember any case in which it has 'been decided here, that the last assignee cannot sue a remote endorser: but it appears, by the MS. report which was read to us, that that point has been expressly decided in the supreme court of the U. States, in the case of Mandeville & Jameson v. Riddle & Co., upon the. ground of a want of privity between the parties, so as to raise an implied promise to pay: and I concur *in that opinion; for whoever sues as an assignee under the act of assembly, must attend to the nature of the instrument, and shew himself entitled to the remedy given by the act. I am therefore of opinion, without considering the second bill of exceptions, that the judgment of the district court ought to be affirmed.
CARRINGTON, Judge
After stating the material facts in the cause, proceeded as follows: The court of hustings seems to have considered promissory notes as standing on the same footing with inland bills of exchange; whereas, they are totally unlike. All our acts of assembly treat them as different instruments; for there is a security, and even dignity, given to bills of exchange, which is not extended to promissory notes; the latter being merely rendered assignable without any new quality added to them, save that of enabling the assignee to maintain an action on them, in his own name. The two instruments, in their nature, are essentially different in form and effect: and it is only by the operation of statutes, that a similitude is created between them in England. In this country, no such similitude has been established by the legislature; and, accordingly, in all the decisions of this court, the distinction has been attended to: consequently, insolvency in the maker of the note, and not mere nonpayment, has been required to be shewn by the assignee before he could even maintain an action against this own immediate endorser upon the implied promise. Of course, there is nothing either in the acts of assembly, or the decisions of the court, which confounds them together; and therefore the action, if sustainable at all, must depend upon other grounds. But it Is impossible to imply a promise for want of a privity between the last endorsee and the remote endorser; and therefore the plaintiff cannot, in the present case, support his action against the defendant, upon the assignment made by the latter, to Johnston ; for the act of assembly does not give it in express words, and the principles of the common law will not sustain it without *a privity, at least, between the parties. So much upon the general principle; but, if a promise could even be implied in ordinary cases, still I think the plaintiff could not recover, in the present case. For, in order to entitle him to do so, he ought to have shewn due diligence; which he has not done. It does not appear that proper steps were taken to recover of Johnston. If, instead of a protest, he had brought a suit, perhaps, the money might have been recovered either by imprisoning the defendant, if arrested, taking goods enough upon the attachment to satisfy the debt in case he had absconded, or in some other way. Under both views of the case, therefore, I think the judgment of the district court, was right, and that it ought to be affirmed.
LYONS, President.
When Mackie v. Davis was decided, I was of opinion that a general assignment of notes and bonds under the g.ct of assembly operated rather as a pledge, or security, for payment of the money, expressed to be due on them, than as an absolute sale; and that the assignor was at liberty to redeem the paper, and pursue the debtor in his own way, upon paying the money to the assignee: But if it was to be taken as a sale, still that there was, even in that case, an implied warranty that the debt was due, and the obligor solvent. I did not, however, consider bonds and notes in this country as negotiable in the same manner, and upon the same terms, as promissory notes in England are. On the contrary I thought it doubtful, whether they admitted of more than one assignment under the act of assembly; for the act of 1748 only allows of discounts as between the obligor and the obligee, or the plaintiff, without saying any thing as to intermediate assignees; and the act of 1786 uses the word assignor and not assignors: But as the practice of ulterior assignments has long prevailed, and suits have been brought and judgments obtained on them, I feel no disposition to disturb the practice now; especially as, by an equitable construction, the words may, perhaps, be taken to éxtend to all the assignors, in order to do justice to the obligor, *and allow him his full discounts. It is certainly true, I think, that, at common law, bonds and notes, being choses in actions, were 'not assignable; and therefore the assignee was obliged to bring his action in the name of the endorser. 6 Mod. 29; 4 Bac. Ab. 205; 2 Ld. Raym. 757; 1 Salk. 129; 2 Burr. 669. In which latter case the judges admitted the common law rule as just laid down; and express^ said that notes were not negotiable, until the statute of Anne: So that, before that time, they appear not to have been upon a footing with inland bills in England; but must have been declared upon specially, or given in evidence upon money counts, 1 Stra. 719; Bull. Nis. Pr. 137: And that they were considered, in this country, as not negotiable in the year 1730, is plain by the act of assembly which then, for the first time, made them assignable ; which was done, as it seems to me, merely for the purpose of private accommodation among the great body of the people, without the least regard to commercial purposes: Eor it was considered, that it would save the trouble of powers of attorney; would, in some measure, answer *881 the purposes of facilitating' collections, and would create additional pledges or securities, for the transactions and exigencies of the planters, who, having no money abroad, or other means of payment, than what depended upon the slow progress of husbandry, were not prepared to answer the rapid calls which commercial papers would have required. Therefore it has always appeared to me, that the legislature intended these assignments should take place under the limitations and restrictions already mentioned ; that is to say, that they should be made subservient to the convenience of the obligee, without being thrown into a state of rapid circulation, which would have been extremely distressing to a young country, in which there were few money lenders; no banks; and but little trade: and where men, engaged in the acquisition of soil, or the improvement of their estates, had none but yearlj resources to enable them to comply with their pecuniary engagements: Hence these papers, when assigned, were left by the acts of ^assembly, subjected, in the hands of the assignees, to all just discounts of the maker against the obligee, before the assignment: which is not the case with bills of exchange ; and would scarcely have been so left, by those statutes, if the legislature had intended that bonds and notes should stand upon the same footing with bills of exchange. But it is said that there was no difference between them before the statute of Anne; and to prove this the case of Williams v. Williams, Carth. 269, is relied on. That case, however, is, at most, but a single one; and it seems to me to be contrary to the general course of decisions upon the subject. But, independent of this, there is great reason, I think, to doubt the correctness of the report; for I do not discover that it is mentioned bj any of the cotemporary reporters, although Salkeld and others of great reputation took notes during the same period; particularly Shower, who reported cases in the king’s bench and exchequer chamber; and therefore must have heard of the case, if it had been decided; yet he does not hint at it in any of his reports, or in his argument in the case of Clarke v. Martin, although he was counsel for the plaintiff, and wished to support the action. Besides it will be recollected that lord Holt was chief justice in 1694, the year in which Williams v. Williams is said to have been decided; and therefore must have had an opportunity of hearing of the case, if it had been determined ; yet he has never mentioned it in any of the cases which came before him. All these circumstances render it doubtful whether there ever was such a case; or, at least, whether any such point was decided in it: To which I may add that the book was not published, or intended to be published by Carthew himself; and therefore it is possible that the case may have been misstated, from his notes, by some other hand, who did not distinguish between bills and notes. However, be that as it may, I do not think that a solitary case ought to prevail against the uniform course of decisions, and the acknowledged doctrines of a long series of years; especially in this court, where the case of Clarke v. Martin *ha,s been recognised as’law. 2 Call, 48. Taking it then to be settled, that there is a difference between bills and notes, it only remains to say a few words upon the point immediately before the court upon the first bill of exceptions in the present case. The pledge, or iriiplied warranty (whichever of them is adopted), was only applicable to Johnston, who assigned to the plaintiff, and not to Harris, between whom and the plaintiff there was no transaction, or responsibility; for neither the pledge, nor the warranty, was assignable at common law; and therefore neither of them could be transferred to the plaintiff. Of course, there was neither consideration nor privity between , the plaintiff and defendant; for the consideration paid by Johnston to Harris was entirely foreign to the plaintiff, who being a mere stranger to the consideration could support no action on it. 1 Salk. 23; Stra. 592; 2 Wils. 141. And there is not that legal relation, or representation, between the parties, which is necessary to constitute a privity, the only alternative for the immediate consideration. Upon the whole, when I consider the difference between bills of exchange and promissory notes before the act of assembly; the restricted nature of the assignment created by that act; and the total want of consideration, or privity, between the last assignee and a remote endorser, I have no difficulty in declaring my opinion to be that the present action is not sustainable; and that the judgment of the district court ought to be affirmed.